Case number 22-1876 from Western Missouri. Micah Riggs v. Robert Gibbs, et al. Mister, is it D-Don? D-Don, yes. When you're ready, you may proceed. May it please the court. My name is John D-Don and I'm here on behalf of plaintiff appellant Micah Riggs. This is a relatively limited appeal. The case below involves a section 1983 claim by my client Micah Riggs against a number of Kansas City, Missouri police officers regarding a couple of warrantless searches of his business. Ultimately, the only issue before this court is whether defendant Gibbs' warrantless search rose to the level that warranted punitive damages. The jury concluded that defendant Gibbs did violate Micah Riggs' Fourth Amendment rights by conducting a warrantless search of his business and seizing money and property. However, despite the evidence of premeditation of this illegal search and evidence that he conducted other similar searches that same day, the court refused to instruct the jury on punitive damages. What's the standard of review here? My understanding is that there was an objection or a request, excuse me, for the instruction and then it was not repeated. The district judge said, hey, let's talk about this again after liability is over and if they find your client, then we'll deal with that then, and that there was no further request made. That's correct. So what occurred was, first of all, I was not trial counsel. My understanding based on the record is that there was a request for a punitive damages instruction. He said, I'm going to deny it at this time. We'll see after, you know, the verdict comes back. There was no further renewal of that request or anything like that. I searched for quite some time for any case law dealing with the issue of whether there's an obligation upon trial counsel to renew that request for a punitive damages instruction. I was unable to locate any cases. And I understand that, but it's an unusual case, really. I mean, you know, a lot of times a trial judge in this situation will say, I'm not going to give the punitive damages instruction at this time. We'll bifurcate that issue. We'll take it up afterwards. And it's really, if you look at what Judge Gaitan did in this case, it's very similar to that. He just says, bring it back to me after there's a verdict, right? And now you get the verdict. Nobody ever brings it back up. And, you know, I know there may not be a case that says you have to take an exception to a refusal to offer up an instruction, because that's our law and everything, right? There's no need for you to do that. But isn't it different when the trial judge says, we'll take this up if you get a verdict, and then you never take it up? Why isn't that at some level, you know, just abandoned? Well, I think that there's clearly evidence in the record that he sought the instruction, that trial counsel sought the punitive damages instruction, no question there, and that it was refused. Whether or not this approach by Judge Gaitan to defer, or I guess not defer decision, leave the door open. No, he deferred the decision. He just said that it can be renewed. Right. And what does that guidance, it said you can bring it up again, what does that mean, if anything? To be very frank, I don't know the legal significance of that. I don't even know what I would call that, because he did refuse the instruction, but I guess he left the door open to future reconsideration. So the fact that future reconsideration was never occurred, I'm not sure that has any legal significance. Well, let me ask you this. So this is a little bit of an unusual situation because, in another way, which is we've applied plein air review in civil cases, I think sometimes without a textual basis, but actually Federal Rule of Civil Procedure 51 says when you fail to make an instructional objection, the review is for plein air. And so it's very explicit about that. And so I wonder if that leads us into what Judge Erickson was suggesting, that the failure to renew that objection in a timely way leads us directly into Rule 51. Well, I think that there is an objection on the record. I think he certainly preserved the issue, and the State of Missouri doesn't argue to the contrary. I think it's – there's no question it's unusual. I just don't think it's unusual in a legally significant way. Is it fair for – let me just ask this one other way. Is it fair for the trial judge to say, hey, I'm not doing it right now, we're not ready for that, but you go and renew the objection, we'll take it up after the trial is over? And, you know, judges have a lot of things to do. Is it fair for him to rely then on counsel to bring it up against rather than, you know, raising the issue on appeal? Well, I think respectfully he didn't say I'm not ruling on this right now. He says I'm denying it. Well, he did say he's denied right now. That's fair. So that would be the way I would distinguish that. I agree that if he said I'm not going to rule and it wasn't then later brought back up, then there would be nothing for this court to review or, at best, plain error. But I think as it is, there is a decision of the court in the record for us to appeal. Is the custom in the Western District similar to what I know to be the custom in the District of North Dakota and the District of Minnesota is that we always bifurcate punitive damages from the liability issue because it just becomes too big a burden for the jury and the punitive damages evidence may bleed into the liability determination? To be perfectly candid, I don't know that I've tried enough cases in the Western District to be able to speak to the custom. I have seen it done the opposite way that you describe, where we have punitive and liability instructions provided at once. Yes, and I think that that's pretty specific regionally. And I know it would come as a surprise, but there are substantial differences between how we try cases in the northern parts of the circuit as opposed to the southern parts. Setting that issue aside, assuming that the issue is preserved, I think that to directly address your question that the standard of review is de novo because it's a punitive damages instruction. I think the briefs sufficiently address that. I don't think there's any dispute on that point. The long and the short of it is there's a lot of evidence here that could support a jury conclusion that the defendant acted with knowledge that there is a substantial risk that his search was illegal. In order to get a jury instruction on this point, there doesn't have to be a whole mountain of evidence. There just has to be some evidence supporting the theory. That's from the Cameron case out of the Second Circuit, which I think is particularly on point here because it's a 1983 case involving a punitive damages instruction. Let me ask you about a different case. So we have a case, and I couldn't even begin to pronounce the name of it, but it's Fort Smith, I think it's 3F41017. And there we said under de novo review that a Section 1983 plaintiff was not entitled to get the claim to the jury because the officer may have been motivated to seize him because of his use of expletives in front of children. And we said that was a good enough reason to get punitives outside the jury. Kind of contrast that here. I mean, could they have had good reason to come in and do the search similar to what we had in that case that takes punitives outside the jury? I apologize. I'm not sure I understand the question. The question really is we've got another case that did not submit it to the jury that applies a different standard than what you were suggesting. And my question there, it was the use of expletives in front of children was a good reason, And my question for you is, isn't this case like that one? I mean, there's no expletives with children, but there could be good reason for the cops to do what they did here. So I think that the evidence in the record shows that the jury concluded that the reason that the cops stated that they searched the business is not the actual reason, right? And I think that we have to credit that conclusion of the jury here at the appellate level. Does that respond to your question? Yeah, although then I wonder whether we take the officers at face value. Here they were talking about expletives in front of children. Here we would be talking about I want to do a liquor license search. There are reasons for us to enter the premises and do the search outside of trying to get at the K2. Certainly, but I think the jury disbelieved the officers' stated explanation. And the evidence in the record clearly showed that they had a plan to go in and do this controlled by. Everything they did was consistent with a criminal investigatory search and not with an administrative search. It's not surprising that the jury didn't believe the administrative search explanation. The fact that you show up to the premises not only with a plan to conduct this search that appears to be of a criminal nature, but also with a cover story is enough for a jury to infer that maybe you knew that a warrantless search of a purely criminal nature would be illegal. I do have a question about the Fort Smith case. In that case, essentially nominal damages while sufficient, could be sufficient to sustain punitive damages, you still needed to show sufficiently egregious conduct to justify. And is that, what precisely is the egregious conduct that is sufficient to justify punitive damages in this case? Well, I think we just need to show that the police officer acted with a knowledge that there was a risk that his search would violate the law, right? And I think that that's demonstrated by his conduct. He clearly attempted to conceal the true purpose of his search and attempted to justify it as an administrative search. And this was not just, this wasn't a situation where the officer, there's a traffic stop, he's poking around and he has to make a judgment call. This was a preconceived plan and I think that makes it all the more reprehensible. Thank you. Thank you. Mr. Talby. May it please the court. You may. This case is about the submissibility of a punitive damages instruction. But really it is whether Mr. Riggs was entitled to punitive damages as a matter of law. Section 1983 presupposes that damages for actual harm suffice to deter constitutional violations. And a finding that an official violated a constitutional right does not necessitate a finding of callous indifference to the federally protected rights of others. To warrant punitive damages. That's where Mr. Riggs' argument leads. He points to evidence that might establish liability. But it's not, but punitive damages are meant to punish outrageous, malicious, intentional conduct and deter extreme conduct in the future. Why wasn't this extreme? I mean, you do a controlled buy, so it's clear from the beginning that K2 is on these officers' minds. The controlled buy happens and then you rush in there without a warrant. We're not under the automobile exception or exigent circumstances. And you start rummaging behind the bar or the counter through materials. Why isn't that pretty egregious conduct? Well, Your Honor, first, it isn't really whether K2 is at issue or not. It's whether the K2 is the sole issue. Because officers can both handle the liquor regulation, which this undoubtedly was. They had been told by the Liquor Authority of Kansas City that Coffee Wonk, Mr. Riggs' business, sold liquor and K2. And so it's not really that they can't, they just have to ignore the K2 part of that. They can look at those in conjunction when looking at the liquor ordinances and whether those are being violated. Well, let me ask you this. And I was wondering about this. I didn't see this in the record. But can a Liquor Authority, an agent or a police officer, if a place has a liquor license, can you just go in and do a search? I mean, like, and search everywhere? Sort of an indiscriminate search? The way the law is for administrative searches, they can conduct a search anywhere that the liquor could be found. And so the difference is whether it's some sort of pretext for just a criminal investigation. So if you believe someone, if you believe an establishment has a liquor license, you can look in cabinets, drawers, anywhere where the liquor could be? Yeah, to ensure that they are both complying with the liquor license, have their liquor license posted in the proper place, actually have a liquor license, are storing liquor safely, and all those sorts of things. Do you need an administrative warrant to do that? In some circumstances, when you're doing building code violations and stuff, we have this in Minnesota, you need a warrant. You don't, at least not within the state of Missouri. You do not. And within the vice unit, the evidence was this was really what Detective Gibbs did. He was in charge of ensuring that, doing tavern checks and ensuring that the liquor ordinances were being complied with. That is how he got brought into this. But I do want to note also, the jury wasn't actually asked to find whether Gibbs's, or didn't necessarily find that Gibbs's sole purpose was this criminal investigation. It was also whether he reasonably believed that Coffee Wonk had a liquor license when he conducted the search. Because he'd been told beforehand. Wasn't the jury allowed either one of those options? They were. And so, yeah, you're right. They could have found it. It's just he didn't, he reasonably believed that, his position. But the other option was that he went in, he had no intention of doing an administrative search and went for criminal purposes. And without a special interrogatory, we don't know which one the jury came back with. So do we need to assume that it was the latter? I don't know of any reason why the court would have to assume the latter. The court only has to accept the facts in the light most favorable to the jury verdict. And where that puts you at, it doesn't necessarily say that you have to accept the facts to determine that punitive damages were proper or something like that. And I would submit that they wouldn't have been proper even if that's what the jury had found. That is simply finding what they need to find for a constitutional violation to occur. And this court has said time and again, that's not enough. And in a different context, in deliberate indifference, so prisoner cases, this court has, in Coleman v. Rage and Washington v. Denny, has overturned a jury verdict for punitive damages, saying that they did not meet the standard for punitive damages under this reckless indifference, reckless or callous disregard, even though the jury's finding of liability was affirmed in which they were finding reckless indifference. It requires more. You mentioned, I think you were mentioning the Fort Smith case. What do you think the standard of review here is? Do you think the standard of review is plein air, or do you think it's de novo review? I think those are the only two options. Maybe I'm wrong about that. We haven't come here to argue that they abandoned or waived. And I think that there is some, I guess, some language in it. It may be the Fort Smith case that says that the review is actually abuse of discretion for the denial of a submission. I agree with counsel that this court has also said that de novo is appropriate. We didn't press the argument about it being waived or being plein air, mainly because we don't believe that the facts under any standard of review rise to the level of punitive damages. And so to get bogged down in what the proper standard is, we think it fails under any standard. That's fair. I think we're allowed to raise the standard of review on our own. So what do you think the right answer is standing here today? Is it plein air, or what would you have us apply? Make your best argument for whatever you believe is right. Your Honor, I believe that the district court sort of conducted this in the way that you all have suggested, which is, hey, I'm not going to submit punitive damages right now. I'm going to deny it. But bring it up if we get a verdict. And it makes particular sense here because we had a 2010 search where two officers were being accused of forging documents. And then we had this 2012 search that involved Detective Gibbs and Detective Onik. And so you had these not only different defendants, you had different incidents. And so it sort of makes sense to say, let's table. I'm going to deny punitive damages right now, but let's see what the jury does. If they come back, I'll reconsider it. So I think that it should have been raised then. I think what it really speaks to is Mr. Riggs has made the argument here that there was overwhelming evidence to support punitive damages. Yet when the jury returned that verdict for $1 against Detective Gibbs, he didn't stand up and say, now, Judge, let me tell you why the facts support punitive damages against Detective Gibbs. He didn't raise it then. And it's sort of this hindsight review of the record to make this point. Yeah, and that's what makes it tough, actually, because the $1 could be indicative of a few things. It could be indicative of the fact that there wasn't really any actual damages. I mean, there was a constitutional violation, but it didn't damage him in any way. Another possibility is this was kind of bad, but it wasn't really bad. And so that's why we're giving him $1. And so that would feed your argument about there being no sort of appetite for punitive damages. And what I would suggest to you, Your Honor, is this isn't a case where Mr. Riggs testified that there were no damages. He asked for somewhere around $6 million from the jury. And they considered each of his claims, and they came back with $1. And the argument he made to the district court on this 2012 search was, look at the video and listen to the audio where Detective Onik was swearing at the clerk. And the jury returned a verdict in favor of Detective Onik. They didn't consider his behavior sufficiently egregious to enter a verdict against him. And I also… Does it make any difference if we look at the verdict form itself, which has a director to the jury, that says that if you find the plaintiff's damages have no monetary value, state nominal amount of $1, and they state $1. I mean, does that change the analysis at all for you? No, Your Honor. I think it's exactly as I said. They found that Detective Gibbs either didn't – his belief wasn't reasonable, and that doesn't really go to his true purpose or his specific intent. I mean, he could be entirely sincere in an unreasonable belief. But they could have found that, or the alternative, that he was solely there for the K2, but found that it wasn't egregious to warrant any other damages other than the dollar. But they certainly provided argument to award substantial damages to Mr. Riggs. They just didn't believe him, essentially. And I want to briefly discuss the premeditation and the repetition of an unlawful act arguments, because neither one of those are supported by the evidence, and inference for those that are not supported by the evidence. The constitutional violation is the failure to get a warrant. But the fact's because no other exception applied. But we've talked about that if there had been a liquor license, that was an issue. But also, the reason why, in a matter of course, a warrant might not be needed, is most people keep their product that is their major seller out on the counter for the customers to see. This was underneath the counter, and so plain view didn't apply here. I see I'm out of time, Your Honor. Thank you. Mr. Deaton, does he have any time left? I'll give you one minute. I'll just make two brief points. First of all, to address a point that you raised, the $1 in nominal damages could also arise from the fact that the actual damages were too uncertain. As I reviewed the record, that was my best guess as to why the jury awarded $1, because there's testimony from my client that he wasn't sure about the value of the K2 that was seized. So I would just submit that. I also believe that there is some doubt. My colleague referenced the idea that this search was undoubtedly a liquor search. I think there is some doubt as to that. That's one of the questions that was presented to the jury for resolution, and they either concluded that the defendant could not have thought that there was a liquor license to support an administrative search, or that it was purely a criminal search. At the end of the day, I think that there is more than enough evidence from which a jury could infer that the defendant acted in the face of a risk, that his search was unconstitutional. Thanks. Thank you very much. The case is submitted and taken under advisement. We will render an opinion in due course. I appreciate it. The court appreciates your time and your briefing.